IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| PAUL JONES, CHRISTINA JONES | § | CASE NO: 06-33790 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |

**MEMORANDUM OPINION**
**FINDINGS AND CONCLUSIONS DISMISSING CASE**

     Debtors completed credit counseling on January 24, 2006. Debtors did not file their petition initiating this chapter 7 bankruptcy case until August 2, 2006, which is approximately 190 days after they completed credit counseling. Debtors are not eligible for bankruptcy relief because they did not satisfy the requirements of 11 U.S.C. § 109(h) (Debtors did not complete a credit counseling course within 180 days prior to filing a voluntary bankruptcy petition). The US Trustee filed a motion to dismiss the case. Because Debtors did not satisfy the statutory requirements for bankruptcy relief, and because the Court finds that it has no discretion in the matter, the case is dismissed. The Court is aware of jurisprudence that holds that the Court should "strike" or "dismiss" the petition rather than dismiss the case, but the Court concludes that the proper disposition is to dismiss the case. The Court recognizes, with regret, that this decision creates a split between bankruptcy judges in this district; therefore the Court will certify the matter for appeal under 28 USC § 158(d)(2) if the parties seek that relief.

**FACTS**

     There is no dispute that Debtors completed their credit counseling course 190 days before the date that they filed their bankruptcy case.[1] The Court will accept as true, for purposes of this decision, the allegations in Debtors' "Certified Statement".[2] In that statement, Debtors allege several reasons why they think the Court should accept the stale credit counseling certificate as sufficient. Since those allegations are insufficient as a matter of law, the Court need not hold a hearing.

**ANALYSIS**

**A.    Counseling 190 Days Prior to Filing a Bankruptcy Case Does Not Meet Statutory Requirements**

     To avail himself or herself of bankruptcy relief, an individual debtor must receive credit

---

[1] Docket ## 9, 11.
[2] Attached to docket # 11.

counseling within the 180-day period preceding the filing of the bankruptcy case. Bankruptcy Code § 109(h) states:

> [A]n individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing… that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

11 U.S.C. § 109(h)(1). *See also*, H.R. Rep. No. 109-31, at 54 (2005).

The Bankruptcy Code does not give the bankruptcy judge discretion to waive or to modify that requirement.

There is a statutory exception to the requirement, but that statutory exception is exceptionally narrow. To be exempt from the credit counseling requirement of § 109(h)(1), a debtor must file a certificate of exigent circumstances. The certification must state that "the debtor requested credit counseling services … but was unable to obtain the services … during the 5-day period beginning on the date on which the debtor made that request." 11 U.S.C. § 109(h)(3).

Debtors have submitted to the Court a Certified Statement that describes exigent circumstances. Debtors seek a waiver of the credit counseling requirement or a ruling that the facts alleged in the certificate satisfy the credit counseling requirement. In the Certified Statement, Debtor Christina Jones alleges:

1. That she and her husband consulted counsel on January 19, 2006, for advice about filing a bankruptcy case;
2. That they immediately (January 24, 2006) took a credit counseling course;
3. That they could not pay counsel's fee at that time, so they delayed filing their bankruptcy petition;
4. That they implemented the credit counseling advice and hoped that they could avoid bankruptcy;
5. That circumstances, including family illness, intervened and Debtors "forgot all about the Bankruptcy[;]"
6. That when bankruptcy relief became necessary, they had difficulty getting financial data from Mr. Jones' employer and had difficulty getting information to file their income tax returns; and
7. That an additional $40 for an additional course of credit counseling and an additional fee of $299 for filing another bankruptcy case would be a burden.

Debtors did not state that they requested credit counseling services immediately prior to filing the case. They cannot certify that they were not able to obtain the services within the 5-day period prior to filing the petition. Therefore they do not meet the requirements for the exemption from credit counseling.

The Court has considered *In re Bricksin*, 346 B.R. 497 (Bankr. N.D. Cal. 2006). The Bricksins received credit counseling on October 19, 2004 and decided not to pursue bankruptcy relief. Instead, they arranged a payment plan for creditors through the credit counseling agency. Payments under the plan continued through July 2005, but after that date the Bricksins were unable to continue the payment plan. Debtors filed for bankruptcy protection on November 22, 2005. The court determined that Congress' objective in requiring counseling was to enable debtors to make an informed choice about bankruptcy alternatives and about the consequences of the various alternatives. *Id.* at 501 (*citing* H.R. Rep. No. 109-031, at 2 (2005)). Although over a year had passed since the Bricksins received counseling, the court concluded that the Bricksins were in compliance with the spirit of the law because the debt repayment plan constituted ongoing credit counseling sufficient to satisfy the statutory requirement on the specific, unusual facts of that case. While legal philosophies differ on whether a debtor must comply with the "spirit" or the "letter" of a law, the result in *Bricksin* satisfies both (unless the findings of fact are vacated or reversed) since the Court explicitly found that participation in the credit counseling program constituted ongoing credit counseling. That is not the situation in the case at bar.

If the Court were permitted any discretion about whether Debtors' exigent circumstances were valid cause for a 10 day extension of time, the Court would exercise that discretion in favor of allowing this bankruptcy case to continue. And if the US Trustee has any discretion (akin to "prosecutorial discretion" in other functions of the Justice Department), the Court would hope that the US Trustee would decline to prosecute a motion to dismiss under the circumstances presented in this case. A debtor who obtains credit counseling only 190 days prior to filing a bankruptcy petition and who delays filing a bankruptcy petition to try to implement the lessons learned in counseling certainly seems to meet the objective of the statute, if not the literal requirement. And unless the US Trustee has unlimited resources, it would seem that limited resources would be better put to other litigation. But the US Trustee has filed a motion to dismiss in this case and Congress allowed bankruptcy judges no discretion. Therefore the Court will fulfill its obligation to rule on the motion under the requirements set out in the statute as they apply to the facts in this case. The Court concludes that the Debtors are not eligible to be debtors in this case.

**B.     Dismiss the case, strike the petition, or dismiss the petition**

Having reached these conclusions, the Court must determine the proper disposition of the US Trustee's motion to dismiss. There is a split in the jurisprudence regarding whether the

appropriate disposition is dismissal of the case, striking the petition, or dismissing the petition.

   *1.     The Nullity Jurisprudence*

       *a.  Hubbard and the Logic of "Striking" the Petition*

Bankruptcy Code § 101(42) defines "petition" as a "petition filed under section 301, 302, 303 or 304 … commencing a case under this title." Bankruptcy Code § 302 states that a case is "commenced by the filing … of a single petition … by an individual that may be a debtor under such chapter and such individual's spouse." Some courts conclude that since only an "eligible debtor" may file a petition and commence a case, a petition filed by a person who is not an eligible debtor fails to commence a case. *See*, *In re Hubbard*, 333 B.R. 377 (Bankr. S.D. Tex. 2005), *reconsideration denied*, *In re Salazar*, 339 B.R. 622 (Bankr. S.D. Tex. 2006), *appeal denied* as moot when parties settled, 2006 WL 1877284 (5th Cir. 2006). *See also*, *In re Rios*, 336 B.R. 177 (Bankr. S.D.N.Y. 2005); *In re Valdez*, 335 B.R. 801 (Bankr. S.D. Fla. 2005); *In re Elmendorf*, 345 B.R. 486 (Bankr. S.D.N.Y. 2006); *In re Thompson*, 344 B.R. 899 (Bankr. S.D. Ind. 2006); *In re Carey*, 341 B.R. 798 (Bankr. M.D. Fla. 2006).

> The debtors were not eligible to file bankruptcy. Accordingly, the filing of their voluntary petitions did not commence cases under chapter 13. …
>     ….
> As set forth above, no "case" was commenced by the filing of these petitions. Because no case was commenced under § 301, there is no "case" to dismiss. The petitions in these five cases are stricken.

*Hubbard*, 333 B.R. at 388.

       *b. The Salazar Modification of the Hubbard Analysis*

*Hubbard* was a combined ruling on 6 cases. One of those cases was filed by Mr. and Mrs. Salazar, who asked for reconsideration of the *Hubbard* ruling. The Salazars argued that although *Hubbard* eases a debtor's burden in a successive filing if a debtor corrects the credit counseling error prior to filing the successor case, the *Hubbard* analysis creates uncertainty about the existence of the automatic stay until the court decides whether (or not) the debtor was eligible to file the first petition. Under *Hubbard*, if the court strikes the petition and renders it a nullity, creditors can reasonably argue that any action that they took prior to the end of the case did not violate the automatic stay. Mr. and Mrs. Salazar argued that this uncertainty and ambiguity should be eliminated by dismissing the case instead of striking the petition.

In *Salazar*, the court concluded that because Congress specifically intended to exclude some people from the bankruptcy process, then it was "implausible" to believe that Congress intended that these "same people" should get the benefit of bankruptcy's most powerful

protection, the automatic stay.[3] In that case, after analyzing chapter 9 law, the court also changed the terminology from "striking" the petition to "dismissing" the petition. But the court ruled that the effects were the same.

> To the extent that dismissing a petition strikes the petition, the two actions are identical. Both terms evidence an intent to rule that the petition filed never commenced a bankruptcy case. …
>
> …Nonetheless, whether a petition is "dismissed" or "stricken" for failure to comply with § 109(h) carries the same consequences regardless of semantics. A *case* "dismissed" under a provision such as § 707 brings a different result than a *petition* "dismissed" under § 109. *See*, *In re Rios*, 336 B.R. 177, 180 (Bankr. S.D.N.Y. 2005). Dismissal of a petition amounts to dismissal of a "case" prior to the case's commencement. …
>
> Understandably, courts have not always chosen their wording in this context with precision. Prior to BAPCPA's enactment, the question of whether to dismiss a case or strike a petition was a difference without a distinction [sic]. It rarely mattered whether an individual's petition in his last case had been "stricken" thereby rendering the current case his first (or second, and so on), or whether it was "dismissed" thereby rendering his current case the second (or third, and so on).

339 B.R. at 633.

*Salazar* cites no authority other than *Rios* (another bankruptcy case dealing with the credit counseling requirement) for the propositions (i) that the court has authority to "strike" a petition because a debtor was not "eligible", (ii) that dismissal of a case under § 109 is different from dismissal of a case under § 707, (iii) that the filing of a bankruptcy case by an ineligible debtor is a juridical nullity, (iv) that pre-BAPCPA the difference between dismissing a case and "striking" the petition was a distinction without a difference, or (v) that dismissing a chapter 7 or 13 petition is different from dismissing a chapter 7 or 13 case. As discussed below, the substance of those contentions is incorrect. This Court cannot agree with the analysis in *Salazar*.

The fundamental premise of *Salazar* is that if Congress has excluded people from the bankruptcy process, then it is implausible to believe that Congress intended "those same people to benefit from bankruptcy's most powerful protection: the automatic stay." This Court has several issues with that statement. First, while the automatic stay is quite powerful, it is arguable whether the automatic stay is bankruptcy's most powerful protection. The automatic stay is temporary; it creates a temporary respite during reorganization or liquidation, shielding the trustee (and through the trustee shielding other creditors) and shielding the debtor from the chaos

---

[3] "*It is implausible to believe that Congress specifically identified people to exclude from the bankruptcy process, yet permitted those same people to benefit from bankruptcy's most powerful protection: the automatic stay.*" *Salazar*, 339 B.R. at 624.

Page 5

of individual creditor executions. The automatic stay terminates when the court so orders,[4] when discharge is entered, or when property ceases to be included in the bankruptcy estate.[5] This Court would argue that that temporary stay is not the most powerful protection of the Bankruptcy Code. Rather, this Court would argue that the provisions of the Bankruptcy Code providing that some property is exempt from creditors' claims,[6] Bankruptcy Code provisions authorizing the debtor to avoid liens,[7] the discharge injunction,[8] and other provisions of the Bankruptcy Code that have permanent consequences are more powerful. But regardless of the power comparisons, *Salazar* is based squarely on the premise that debtors whom Congress has declared to be ineligible should not be able to benefit from the Bankruptcy Code. But in its very next opinion on this subject, the *Hubbard/Salazar* court concludes that local procedural deadlines can trump the Congressional policy concerning ineligibility allowing ineligible debtors to obtain (probably) permanent bankruptcy relief. If it is implausible to believe that Congress did not intend temporary relief to be available to ineligible debtors, it is even more implausible to believe that Congress intended permanent relief to be available to ineligible debtors.

       *c. Relief for the ineligible…nullity overcome by a default order—In re Allison*

In *In re Allison*, 2006 WL 2620480 (Bankr. S.D. Tex. 2006), the *Hubbard/Salazar* opinions confront one ambiguity and one of the many problems that the Nullity Jurisprudence makes inevitable.

In *Allison*, debtors were ineligible to file their bankruptcy petition under chapter 13 because their debt limits exceeded the statutory limit of § 109(e). Therefore, under the *Hubbard/Salazar* reasoning, debtors' chapter 13 petition was a nullity; the petition was not sufficient to commence the case. The applicable statutory language defining "petition", determining "commencement of case", and defining "debtor eligibility" for chapter 13 (§ 109(e)) is identical with the correlative language in § 109(h) which is involved in *Hubbard/Salazar* and all of the Nullity Jurisprudence.

The creditor who moved for dismissal of the *Allison* case cited *Hubbard/Salazar* for the proposition that eligibility was jurisdictional. If *Hubbard/Salazar* are correct, then no case is commenced by the filing of a petition by an ineligible debtor. Federal jurisdiction exists only if a bankruptcy case exists.[9] Under *Hubbard/Salazar* ineligibility to file a petition precludes commencement of a case. If there is no bankruptcy case, there is no federal jurisdiction. One cannot say that eligibility to be a debtor is critical to commencement of a case but nevertheless maintain that eligibility to be a debtor is not jurisdictional. Under *Hubbard/Salazar*, the *Allison* petition was a nullity.

---

[4] Bankruptcy Code § 362(d).
[5] Bankruptcy Code § 362(c).
[6] Bankruptcy Code § 522.
[7] *Id.*
[8] Bankruptcy Code § 524.
[9] 28 USC § 1334.

*Allison* purports to reconcile *Hubbard/Salazar* with the Fifth Circuit opinion in *Promenade Nat'l Bank v. Phillips (In re Phillips),* 844 F.2d 230 (5th Cir. 1988) which had held that eligibility to be a debtor was just that, eligibility for bankruptcy relief, <u>not</u> jurisdictional. Notwithstanding the statements in *Allison* to the contrary, those cases are not compatible. If a case has not been commenced, there is no case, and if there is no bankruptcy case, there is no federal jurisdiction.[10]

But *Allison* denied the motion to dismiss. The best defense of the *Allison* result is not that *Hubbard/Salazar* do not conflict with *Phillips*, but that *Allison* holds that the creditor who brought the motion is precluded from raising that issue. The creditor's motion to dismiss was filed after the Court had confirmed the debtors' chapter 13 plan. The chapter 13 plan had been confirmed by default order issued prior to the scheduled hearing because no objection to plan confirmation had been timely filed under local rules. *Allison* holds that jurisdiction was adjudicated in the order confirming the debtors' chapter 13 plan, that the confirmation order was final, and that issue of subject matter jurisdiction became *res judicata*. This conclusion is necessary to effect the Nullity Jurisprudence since any other result would mean that debtors could make chapter 13 plan payments for as long as five years, only to find out shortly before their discharge that the bankruptcy court had no jurisdiction and the entire proceeding took place without juridical authority.

As necessary as the result is (if the Nullity Jurisprudence prevails), *Allison's* analysis leaves substantial issues undecided. It is reasonable to question whether it is appropriate to adjudicate the issue of eligibility, and thus the issue of jurisdiction over subject matter, in a default order, issued without hearing, in which the eligibility issues were not actually raised or considered. More significant, while confirmation orders concerning chapter 11 plans are clearly final orders, this Court would not consider that orders confirming chapter 13 plans are necessarily "final orders" in the same context, since a modified plan can be filed at any time, by any number of parties, and for a number of reasons.[11] Would jurisdiction again be open for decision if a modified plan were filed?[12] Another question is what orders, other than chapter 13 confirmation orders, are final orders precluding subsequent litigation of what *Hubbard/Salazar* establish as issues determining subject matter jurisdiction. For example, would an order appointing a chapter 7 trustee adjudicate eligibility to file a petition and commencement of a case? What about an emergency order for sale of perishable property?[13]

---

[10] *Id.*

[11] Bankruptcy Code § 1329.

[12] Bankruptcy Code § 1329 requires reconsideration of all § 1325 confirmation issues apply to the modification hearing. Therefore, if eligibility was a requisite determination to plan confirmation, it must be reconsidered upon modification.

[13] *Allison,* citing <u>Kontrick v. Ryan, 540 U.S. 443, 455 n. 9 (2004)</u>, recognizes that the application of *res judicata* requires a "final" order. Bankruptcy cases involve literally thousands of orders in contested matters. There is no one, clear, easily applicable rule for which of them constitutes a "final" order. Even more elusive is the *Allison* test that the determination of jurisdiction is final only "once a court makes a determination that it has jurisdiction and renders a <u>final decision.</u>" 2006 WL 2620480, at *9 (emphasis added). This Court has no idea what a "final decision"

### d.     *The Nullity Jurisprudence creates unnecessary and harmful uncertainty*

Most of the Nullity Jurisprudence seems to be concerned about avoiding harsh results of BAPCPA amendments.  The Nullity Jurisprudence would eliminate this burden by "striking" the first petition or "dismissing" the first petition to obliterate any effects of the first filing.  *Hubbard* is principled, not strictly results-oriented; the *Hubbard/Salazar* result derives from an exceptionally strict interpretation of the Code, and *Salazar* tries to improve the statutory analysis by focusing on what it concludes was the Congressional objective.

But the objective of reducing the burden on unfortunate debtors requires infinite patches and fixes during the course of the case.  *Allison* was filed January 2, 2006; the court confirmed the chapter 13 plan on May 22, 2006.  For five months, the case was in a twilight zone of ambiguity and uncertainty.  Did the court have subject matter jurisdiction or was the case a nullity?  To prevent this zone from continuing for as long as five years, the *Allison* court found it necessary to rule that a chapter 13 confirmation order precluded subsequent adjudication of subject matter jurisdiction.  A case that was a "nullity" for almost 5 months, filed by a petitioner whom "Congress specifically identified … to exclude from the bankruptcy process"[14] nevertheless became an unassailable case in which the debtor was entitled to permanent bankruptcy relief.  And all this happened by default judgment without hearing or explicit court consideration.  To protect all parties during the zone of ambiguity, the *Allison* decision suggests that the Court enter interim orders to establish a stay, to protect the debtor, to protect creditors, *etc*.  With thousands of pending cases, and an infinite number of uncertain issues, this solution is fraught with difficulty.  But it illustrates the number of patches and fixes that the Nullity Jurisprudence requires.  While the *Allison* result is workable, it is unnecessary difficult, expensive (resource intensive), and fragile.  The same results obtain, much more simply, if one concludes that ineligibility results in dismissal, not nullity.  Or, if the motion to dismiss is brought too late, laches or estoppel is a much more flexible adjudication than *res judicata*.

The Nullity Jurisprudence uses major, invasive neurosurgery to solve a perceived problem that could be resolved with an aspirin.  Debtors are entitled to file second (and even third cases) if their first case is dismissed because they neglected to conclude credit counseling prior to filing their bankruptcy petition.  Their additional burden is (i) to pay a second filing fee, (ii) to file a motion to extend the § 362 stay beyond 30 days, and (iii) to prove that the second filing was in good faith.  Creditor rights and recognition of Congressional objectives to deny benefits to ineligible debtors is equally simple.  If one interprets §109 as *Phillips* instructs (*i.e.* that eligibility is not critical to commencement of a case but is grounds for dismissal), a bankruptcy court has explicit statutory power to effect Congressional objectives to deny ineligible debtors the benefit of the § 362 stay.  One does not need to attack jurisdiction over the

---

in a chapter 13 bankruptcy case is, unless it is the discharge order.  An initial confirmation order could not be a "final decision" since all § 1325 confirmation factors must be reconsidered if a motion is filed to modify the plan.

[14]  *Salazar*, 339 B.R. at 624.

Page 8

subject matter to accomplish that Congressional objective. The bankruptcy court has explicit statutory authority to protect creditors from abuse, either in a first case or in any subsequent case; § 362(d) authorizes the court to annul the stay retroactively if appropriate, which is the same result that *Salazar* reaches whether or not the remedy is appropriate.

### 2.     *The Eligibility Jurisprudence—the majority rule*

The majority of courts addressing this issue have concluded that when the Debtor is not eligible to file a bankruptcy petition the Court should dismiss the case, not "strike the petition". *See*, *In re Westover*, 2006 WL 1982751 (Banrk. D. Vt. 2006); *In re Tomco*, 339 B.R. 145 (Bankr. W.D. Pa. 2006); *In re Racette*, 343 B.R. 200 (Bankr. E.D. Wis. 2006); *In re Mills*, 341 B.R. 106 (Bankr. D. Colo. 2006); *In re Brown*, 342 B.R. 248 (Bankr. D. Md. 2006); *In re Seaman*, 340 B.R. 698 (Bankr. E.D.N.Y. 2006) (listing a large number of additional cases).

#### a.     *Pre-BAPCPA jurisprudence*

There is persuasive (perhaps controlling) pre-BAPCPA jurisprudence that recognizes that a case is commenced even if the petition was filed by an ineligible debtor.

Although credit counseling, as a condition of eligibility for bankruptcy relief, became law in 2005 as part of BAPCPA, debtor eligibility requirements of § 109 are not new to the Bankruptcy Code. Since its enactment in 1978, § 109 of the Bankruptcy Code has set eligibility requirements for chapter 7, chapter 9, chapter 11, and chapter 13.[15] Amendments to the statute have added requirements for chapter 12 and have declared that individuals are not eligible to be debtors under any chapter if those individuals were debtors in cases that were dismissed within the 180 days previous to their most recent filing and if those prior cases were dismissed under certain circumstances.[16] The relevant statutory language for credit counseling eligibility is exactly the same, and is even written in the same section of the Bankruptcy Code.

There is extensive jurisprudence holding even though a petition was filed by a person declared ineligible under § 109, the filing of the petition commenced a case that existed until it was dismissed; the Court had jurisdiction under 28 USC § 1334 (a) and (b) because a case existed; the case was not void *ab initio* or a nullity. There is no reason to conclude that language in § 109(h) is to be read any differently from identical language in § 109(a),(b),(c),(d),(e) and (g). *In re Seaman*, 340 B.R. 698 (Bankr. E.D.N.Y. 2006) explains the analysis:

> Section 109 of the Bankruptcy Code, captioned "Who may be a debtor," sets forth eligibility criteria for various types of bankruptcy filings. For example, Section 109(e) addresses who may be a debtor under Chapter 13, and provides that a debtor under this Chapter must have "regular income" and unsecured and

---

[15] Bankruptcy Code § 109(b), (c), (d), and (e).
[16] Bankruptcy Code § 109(f) and (g).

secured debts that do not exceed prescribed limits. Courts have, with apparent unanimity, concluded that when a Chapter 13 petitioner is ineligible under Section 109(e), the case should be either voluntarily converted or dismissed. *See, e.g., In re Mazzeo,* 131 F.3d 295 (2d Cir. 1997) (affirming dismissal of case where debtor's unsecured debt exceeded the Section 109(e) limit). *See also*, *Dillon v. Texas Comm'n on Envtl. Quality,* 138 Fed.Appx. 609, 612 (5th Cir. 2005) (dismissal of case was proper where debtor was ineligible); *In re Ross,* 338 B.R. 134, 136-37 and n. 2 (Bankr. N.D. Ga. 2006) ("Almost all courts now recognize that the filing of a chapter 13 petition by a debtor ineligible to do so under § 109(e) nevertheless commences a case that invokes the jurisdiction of the bankruptcy court"); *In re Rifkin,* 124 B.R. 626, 629 (Bankr. E.D.N.Y. 1991) ("Whether the debtor is eligible to proceed under Chapter 13 is in essence a motion to dismiss.").

   Courts have similarly dismissed, not stricken, bankruptcy cases filed by petitioners who are ineligible for bankruptcy relief by virtue of their corporate or entity status. *See, e.g., In re C-TC 9th Avenue P'ship,* 113 F.3d 1304 (2d Cir.1997) (dismissing bankruptcy case of partnership in dissolution that was ineligible to be a Chapter 11 debtor under 11 U.S.C. § 109(d)); *In re Westville Distribution and Transp.,* 293 B.R. 101 (Bankr. D. Conn. 2003) (dismissing bankruptcy case under 11 U.S.C. §§ 109(a), (b), and (d) where entity on whose behalf a petition was filed had no legal corporate existence).

   Courts also have dismissed, rather than stricken, bankruptcy cases filed by petitioners who are ineligible under Section 109(g) of the Bankruptcy Code. Section 109(g) provides that an individual is ineligible to be a debtor if he or she has failed willfully to abide by an order of the court, or has requested and obtained the voluntary dismissal of a case after the filing of a motion for relief from the automatic stay. 11 U.S.C. §§ 109(g)(1), 109(g)(2).

*Seaman*, 340 B.R. at 701-02.

Prior to BAPCPA the Court of Appeals for the Fifth Circuit very clearly articulated that rule.

   The Bank had argued that eligibility under § 109(g) raised an issue of subject matter jurisdiction. We disagree. …

    ….

   "In a sense, every decision by a court to grant or withhold relief involves 'jurisdiction'-its exercise not its lack. Cases can be dismissed, and relief withheld, for reasons other than lack of subject-matter jurisdiction. 11 U.S.C. § 109 collects several such reasons, whose non-jurisdictional character may be indicated by examples."

   As stated by the court in *In re Johnson, supra,* 13 B.R. at 346, subject matter jurisdiction of the bankruptcy court comes from 28 U.S.C. § 1471 [now § 1334] and 28 U.S.C. § 157, which provide that the bankruptcy courts shall have exclusive jurisdiction of all cases arising under Title 11. On the other hand, issues

pertaining to whether a debtor meets the requirements of § 109(g)(2) only "determine whether or not the court must dismiss the case. They are factual or legal questions which the court must determine. They are the issues raised by the pleadings. They are defenses not jurisdictional requirements." *Id*. …
….
To hold that the issue of debtor eligibility implicates subject matter jurisdiction would have far-reaching consequences. If eligibility raised an issue of subject matter jurisdiction, the parties could not expressly waive, or be held to have waived, their objections on the issue. *E.g., Sosna v. Iowa,* 419 U.S. 393, 398 (1975); *Mitchell v. Maurer,* 293 U.S. 237, 244 (1934). More important, the issue may, and indeed must, be raised on appeal, even on the court's own motion. *Sumner v. Mata,* 449 U.S. 539, 547 n. 2 (1981). *See also* Fed.R.Civ.P. 12(h)(3).
In short, a closer analysis of the question indicates that eligibility does not raise an issue of subject matter jurisdiction.
*Matter of Phillips*, 844 F.2d 230, 236 n.2 (5th Cir. 1988) (citation omitted).

> b. *This Court adopts the reasoning in Seaman. Judge Stong got it right.*

The Court finds the analysis in *In re Seaman* to be excellent and persuasive. Since this Court cannot improve that analysis, this Court adopts Judge Stong's opinion with this summary of her conclusions and with mention of the following supplementary points.

An individual's eligibility to be a debtor under § 109 is not jurisdictional. This conclusion comports with fundamental notions of due process. In addition, as Judge Stong notes, this conclusion avoids a number of nightmares, including: (i) perpetual litigation concerning the existence and willfulness of an automatic stay violation, (ii) the validity of an action taken by a creditor against property that might be property of the estate if it is later determined that the debtor was eligible to file a petition, (iii) the prospect of unnecessary inaction by a cautious creditor where a petitioner proves to be ineligible, (iv) new burdens and uncertainties for case administration such as whether filing fees must be returned to ineligible petitioners and whether Chapter 7 trustees may be compensated for work on cases that prove to be a nullity or void *ab initio*.

To those issues raised by Judge Stong, this opinion would add the following examples and concerns. Suppose that a chapter 7 trustee dutifully takes possession of property of the estate, sells perishable property on an emergency basis, and the bankruptcy court later rules that the case is void *ab initio*. Is the trustee liable for wrongfully taking possession of the property? Does the trustee's usual immunity for actions taken in good faith apply? Do sales of property that might occur prior to the ruling on eligibility transfer good title? Is an entity in possession of property of the (putative) estate, or a custodian, required to turn over that property to the trustee?[17] If so, what are the consequences of that turnover with regard to (i) liability of the

---

[17] Bankrutpcy Code § 542, 543.

Page 11

custodian and trustee, (ii) the effect of possessory liens, *etc.* Bankruptcy Code § 349 addresses these issues for dismissal, but not for "striking" a petition or "dismissing" a petition on the basis that a case was never commenced.

While "striking" a petition or "dismissing" a petition may comport with Congressional objectives to deny bankruptcy protection in the first case to a debtor who did not take credit counseling, that solution contravenes Congressional purpose in because it exempts the debtor from the requirement of making a special showing of good faith when filing a second petition. And if it is implausible that Congress intended ineligible debtors to get the benefit of a temporary § 362 stay, how implausible is it that Congress would have intended that the same debtors get the benefit of a bankruptcy discharge if they are able to confirm a chapter 13 plan by default?

Finally, as Judge Stong noted, and as the Fifth Circuit noted in *Phillips*, retroactive dismissal of cases puts into question the Court's jurisdiction and authority during the period between the filing of the petition and the date that the Court "strikes" the petition. As illustrated by *Allison*, the Nullity Jurisprudence does not deny an ineligible debtor the most powerful benefits of the Bankruptcy Code if the debtor can obtain a default plan confirmation order prior to a hearing on a motion to dismiss, but it is difficult to determine when and how the issue becomes *res judicata* because the Courts will have to decide, on a case by case basis, which bankruptcy court orders determine eligibility and which ones do not. As this opinion noted, substantial questions arise with respect to the authority and liability of a chapter 7 trustee who does his or her duty quickly and effectively. There are substantial questions about protecting third parties such as purchasers of what was purportedly property of the estate.

> *3. Is there authority for these semantic differences, are these complex analyses necessary, and do they create greater problems than they solve?*

The decisions that have considered this issue to date, both the Nullity Jurisprudence and the Eligibility Jurisprudence, seem to assume, without citation of clear authority, that the Court has "alternatives" of dismissing the petition, striking the petition, or dismissing the case. The Court cannot find statutory support for this assumption that these are alternatives. Sections 348, 349, and 350 establish the consequences of conversion, dismissal, and closing a case. The only section that deals with dismissal of a petition is in chapter 9, which the Court finds to be inapplicable for a number of reasons.[18]

*Allison* notes that rule 9011 of the Federal Rules of Bankruptcy Procedure refers to striking a petition. It allows a petition to be stricken if it is not signed and if that omission is not corrected promptly after the party is notified. There is no provision in the rule for striking a petition because the debtor was not eligible to file the petition. And there is no indication in the rule that striking the petition has any effect other than dismissal of the case.

---

[18] Chapter 9 is inapplicable to chapter 7, 11, 12, and 13 cases, *see* Bankruptcy Code § 103.

Page 12

Once having assumed that the Court has the option of dismissing or striking the petition, the Nullity Jurisprudence then further assumes that if one strikes or dismisses the petition the effect is to erase all effects of having filed the petition. Dismissal of a petition or striking a petition represents "an intent to rule that the petition filed never commenced a bankruptcy case."[19] "Dismissal of a petition amounts to dismissal of a 'case' prior to the case's commencement."[20] Frankly, this Court does not understand how a judge can dismiss a case prior to the commencement of the case.

US Trustees have filed motions to dismiss under § 109(h) even though debtors materially complied with the statutory requirements, even though debtors had in good faith tried to fulfill Congressional objectives concerning credit counseling, and even though there was no good purpose to serve by filing a motion to dismiss. Perhaps the US Trustees were reluctant to exercise the same prosecutorial discretion that US Attorneys have always exercised because the Nullity Jurisprudence imposes such drastic consequences if the debtor is eventually found to be not eligible: *i.e.* striking the petitions, holding that "no case is commenced", and holding that the petition is void *ab initio.* If there is a possibility of such a drastic result, the US Trustees are well advised to address the question early on, in every case, to protect innocent third parties such as trustees and good faith purchasers. Perhaps the US Trustees would be more inclined to exercise prosecutorial discretion if it were clear that eligibility is not jurisdictional, as the Fifth Circuit has indicated in *Phillips* with respect to other § 109 issues, and if the consequences of not bringing the motion to dismiss were not so vague and potentially serious.

### C. Recognition of split in decisions in this district; the need for Circuit consideration

As set out in the introductory paragraph, it is with sincere regret that this Court cannot adopt the reasoning of my esteemed colleague who wrote *Hubbard, Salazar, and Allison*. Judge Isgur and I have discussed, at length, the analysis in his opinions and the analysis in this opinion. I respect that the logic and the commitment of those decisions tries to interpret the statutes as Judge Isgur sees them.

I do not disagree with his conclusion that the statutory language can be read in the way that he reads it. I simply disagree that it <u>should</u> be read that way. Applying rigorous logic devoid of statutory and jurisprudential context, it is correct to say that a petition filed by an ineligible person is not a "petition" and that a "petition" filed by an ineligible person does not "commence" a case. And if there is no case, there is no federal jurisdiction.

But Judge Isgur's reading of the statute is not the only possible interpretation. Section 302 states that a case "is commenced" by the filing of a "petition". At least one court has held

---

[19] *Rios*, 336 B.R. at 180.
[20] *Salazar*, 339 B.R. at 633.

Page 13

that "the language of section 301 has an expansive connotation and means 'might' or is meant to express a 'possibility.'"[21]

And then there is the principle that identical statutory provisions must be construed *in pari materia*. *Phillips* and the myriad cases cited by Judge Stong were issued and published long before Congress enacted § 109(h). Those cases clearly held that § 109 limitations were not jurisdictional, that a petition filed by an ineligible petitioner is not null but has juridical effect, that a petition filed by an ineligible petitioner nevertheless creates a case over which federal courts have jurisdiction, and that the case so created can be dismissed or converted. The reasoning of those cases was that if Congress had intended to make eligibility a jurisdictional issue, then Congress would have put eligibility requirements in 28 USC § 1334, not in § 109 of the Bankruptcy Code. After that jurisprudence was clearly established, Congress enacted the credit counseling requirements as an eligibility requirement of § 109, in precisely the same language as the eligibility requirements that had previously been interpreted by the courts. Presumably, one should interpret the new, identical language, in the same section of a statute, in the same way that its correlative language has been interpreted for almost 20 years.

Judge Isgur and I both believe that the statute can be interpreted either way. We differ on what we think is the correct interpretation. We both believe that appellate guidance is imperative, and we would suggest direct appeal to the Circuit to resolve the issue for a number of districts instead of for a single district. The majority of this opinion has been dedicated to exploring the points of disagreement with *Hubbard/Salazar/Allison* to try to assure that those differences are clear to the appellate court. If the parties request, I will certify the matter for direct appeal.

## CONCLUSION

Debtors are ineligible to be debtors in this bankruptcy case because they did not satisfy the requirements of Bankruptcy Code § 109(h). The filing of the petition is not a nullity. The filing of the petition gave rise to a bankruptcy case which, upon motion by the US Trustee, the Court is obliged to dismiss regardless of the fact that Debtors "almost" met the requirements of the statute, regardless of the fact that Debtors seem to have satisfied Congressional objectives that were enacted as part of the statute, regardless of the fact that no one contends that Debtors were not in good faith, regardless of the fact that no one contends that they did not make a zealous effort to accomplish the Congressional objective, and regardless of the fact that no useful purpose will apparently be served by dismissal.

---

[21] *In re Westover*, 2006 WL 1982751 (Bankr. Vt. 2006).

Therefore, by separate order issued this date, this case is dismissed.

SIGNED October 20, 2006

*Wesley W. Steen*

WESLEY W. STEEN
UNITED STATES BANKRUPTCY JUDGE